284 F.2d 502
 MICHIGAN TRUST COMPANY, Executor of the Estate of R. Wallace Hook, Plaintiff-Appellant,
v.
Giles KAVANAGH, Collector of Internal Revenue for the District of Michigan, substituted by Thomas G. Kavanagh, Jr., Adm'r., Defendant-Appellee.
 No. 14073.
 United States Court of Appeals Sixth Circuit.
 December 14, 1960.
 
 Peter Van Domelen, Grand Rapids, Mich. (Harold S. Sawyer and Warner, Norcross & Judd, Grand Rapids, Mich., on the brief), for appellant.
 Joseph Kovner, Tax Division, Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Loring W. Post, Carolyn R. Just, Attys., Dept. of Justice, Washington, D. C., and Wendell A. Miles, U. S. Atty., Grand Rapids, Mich., on the brief), for appellee.
 Before SIMONS, Senior Judge, and MARTIN and O'SULLIVAN, Circuit Judges.
 SIMONS, Senior Judge.
 
 
 1
 The appellant is the executor of the estate of R. Wallace Hook, and also Hook's successor as sole trustee of three identical inter vivos trusts, executed one for each of his three sons on April 17, 1931. Hook died on March 8, 1948. On or about June 3, 1949, appellant filed a federal estate tax return for Hook's estate and paid a tax thereon in the sum of $115,770.75.
 
 
 2
 The Commissioner of Internal Revenue assessed against the estate a deficiency of $69,572.50, plus interest, upon the ground that the fair market value of the decedent's residence should be increased from $40,000 to $50,000 and that the trust property in the three trusts in their entire amount should be included in the decedent's estate, for tax purposes, because the transfers with power reserved to alter, amend or revoke, are includible in the gross estate under the provisions of Sec. 811(d)(2) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 811(d)(2). The deficiency was paid by the appellant, who duly filed a claim for refund, which was denied.
 
 
 3
 On February 13, 1952, the appellant, as trustee, filed a petition in the Circuit Court for Kent County, Michigan, in chancery, seeking construction of the trusts and requesting instructions as to its rights and obligations under the power reserved by the settlor in the trust instruments, in view of the Commissioner's determination that the trusts were subject to a power to alter, amend or revoke. On April 8th, the state court entered a decree, instructing the trustee that the power of invasion by the trustee of the corpus of each of the trusts, as set forth in paragraph 7, is a limited power, exercisable only in case of special emergency and since it is measured by a definite external standard is subject to the jurisdiction and control of the court and that the plaintiff, as trustee and as executor of the estate of Hook, has no power to invade the principal of the trusts, except upon a showing of a special emergency in the ordinary meaning of the term. The trustee in this case relies upon the decision in the state court, and considers it controlling on the issue involved.
 
 
 4
 On February 24, 1955, the appellee here sought a partial summary judgment, pursuant to Rule 56, 28 U.S.C.A., on the ground that no factual issue being involved the corpus and accumulated income were includible in the decedent's gross estate, as a matter of law, under Sec. 811 (d)(2). Appellant, likewise, filed a motion for partial summary judgment, subject to the reservation that should the court hold the corpus of the trusts to be includible in the decedent's gross estate, the question of whether the accumulated income is also includible should be reserved for a later trial. The district judge of the Eastern District of Michigan granted the appellee's motion in respect to the corpus 137 F.Supp. 52 leaving the question of the includibility of accumulated income for a later trial. Subsequently, the case was transferred, by appropriate order, to the United States District Court for the Western District of Michigan. Thereafter, on February 20, 1958, the parties resolved the question of the value of decedent's residence by stipulation and agreed that the value of the trust property, at decedent's death, was $217,197.90, of which $65,658 constituted, at the time of death, the adjusted value of the corpus transferred to the trusts by the decedent and the accumulated interest of the three trusts from their creation to the decedent's death was $151,539.90. It was further stipulated that the sole remaining issue of law was the includibility of the income in the gross estate under Sec. 811(d)(2). That issue was submitted to the District Court of the Western District of Michigan which ruled that the accumulated income was likewise includible in the decedent's estate, for federal estate tax purposes.
 
 
 5
 The appellant appeals both decisions. They have been consolidated into a single appeal and were so presented to this court. We assume that the convenience of the parties dictated the transfer of jurisdiction from the Eastern District to the Western District. We have, then, a judgment in the Eastern District of Michigan that the corpus of the trusts was includible in the decedent's estate and a judgment in the Western District of Michigan that the income of the trusts was, likewise, includible.
 
 
 6
 We turn now to the consideration of applicable law, considering first the alleged includibility of the corpus of each trust in the decedent's gross estate. The pertinent statutory provision is Sec. 811 (d)(2) of the Internal Revenue Code of 1939. It provides:
 
 
 7
 "Sec. 811 Gross Estate. The value of the gross estate of decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside the United States.
 
 
 8
 "(d) Revocable Transfers — * *
 
 
 9
 "(2) Transfers on or prior to June 22, 1936. —
 
 
 10
 "To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. * * *"
 
 
 11
 Since the transfers were made in 1931, they are governed by the provisions of the statute applicable to transfers made prior to June 22, 1936, which provide that the value of the gross estate of the decedent shall be determined by including the value at the time of death of all property, real or personal, tangible or intangible, to the extent of any interest therein of which the decedent had at any time made a transfer by trust or enjoyment thereof was subject at the date of death to any change through the exercise of a power by the decedent to alter, amend or revoke. This power has been held to be the power of a settlor, during his life, to terminate the trusts and distribute the principal and income to the beneficiaries upon the conditions set forth in the trust instrument. Commissioner of Internal Revenue v. Holmes, 326 U.S. 480, 66 S.Ct. 257, 260, 90 L.Ed. 228. The court declared that Sec. 811(d)(2) was concerned with present substantial economic benefit rather than the technical vesting of estates and the donor had retained control over this benefit leading to the generalization that "a donor who keeps so strong a hold over the actual or immediate enjoyment of what he puts beyond his own power to retake has not divested himself of that degree of control which § 811(d)(2) requires in order to avoid the tax." The Holmes case was followed and further clarified by Lober v. United States, 346 U.S. 335, 74 S.Ct. 98, 98 L.Ed. 15, where the rationale of Holmes was approved and followed. And, so, Holmes and Lober clearly indicate that a power to invade corpus and distribute to the beneficiaries is a power to alter, amend or revoke, under the statute, and this includes a power to terminate the trusts, altogether.
 
 
 12
 Both litigants agree that if the donor retains a power to invade corpus, but the power is limited by a determinable external standard, enforceable in a court of equity, then the power is not a power to alter, amend or revoke. This rule was developed in the Second Circuit in Jennings v. Smith, 161 F.2d 74, 77. There, the power to invade corpus, if the beneficiary or his issue "suffer prolonged illness or be overtaken by financial misfortune which the trustees deem extraordinary," did not constitute a power to alter, amend or revoke. The standard, as a limitation on the power, was specific. Here, there is no specificity but the exercise of the power is left to the unbridled discretion of the settlor. The alleged limitation furnished no guide as to what constituted "a special emergency."
 
 
 13
 In Hurd v. Commissioner, 1 Cir., 160 F.2d 610, 612 there was, likewise, no specific direction as to an adequate external standard enforceable in equity where the limitation upon the power merely stated that "the circumstances so required." It was therefore, not an adequate external standard enforceable in equity. Said the Court: "The word `circumstances', * * is as wide as the world. To say that it imposes a legal limitation, or imparts a controlling contingency, is to stretch it far beyond good sense." We agree.
 
 
 14
 The fifth paragraph of the trust instrument provides that the trust shall be at an end, and the property shall be transferred and delivered to the beneficiary to be his absolutely, upon the day following his thirty-fifth birthday, subject, however, to the provisions of the seventh paragraph of the trust which reads:
 
 
 15
 "Seventh: Any provision in this agreement notwithstanding, the Trustee shall have the right in his absolute discretion to distribute in whole or part, the Trust Property to the Beneficiary at any time and in such manner and amount as he may deem the situation to warrant, it being the intention of the Grantor that while under ordinary circumstances it is not the desire that the Beneficiary come into the ownership of the Trust Property until the happening of all the conditions heretofore provided in that connection, the Trustees shall nonetheless be free to distribute the Trust Property, or any part thereof, to the Beneficiary at any time or in any manner and amount, should what the Trustee deems a special emergency arise."
 
 
 16
 In other words, the fifth paragraph emphasizes and foreshadows the exception contained in the seventh paragraph which becomes the dominant provision, with respect to whether there is a limitation on the power to invade the corpus of the trust.
 
 
 17
 Another argument of the appellant remains to be evaluated. The appellant contends that the District Judge was not free to make his own finding on the question of the adequacy of the external standard and that the District Judge should have been bound by the decree of the state court as to whether there was an adequate external standard enforceable in equity. The appellant places great stress upon Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465, in support of the contention that local decisions are binding in tax cases. We are mindful, however, of the principle that state law may control in taxing matters only when the federal taxing act, by express language or necessary implication, makes its operation dependent upon state law. In the Blair case, the question submitted to the court was the validity of a beneficiary's assignment of his interest in trust property. However, in the present case, the question involved is whether a statutory standard laid down by the Internal Revenue Code has been met. This is a federal question which a state court is without power to decide, unless the statute makes decision dependent on state law. The summary judgment on the issues involved in the Eastern District of Michigan is not erroneous and will be affirmed.
 
 
 18
 There remains the question whether income represented by dividends on corporate stock is includible in the estate of the decedent. The Seventh Circuit Court of Appeals, on comparable facts and with careful discussion, rejected this concept. Commissioner of Internal Revenue v. McDermott's Estate, 7 Cir., 222 F.2d 665, 55 A.L.R.2d 410. It applied its own rationalization in Commissioner of Internal Revenue v. Gidwitz' Estate, 7 Cir., 196 F.2d 813. In both cases, it was argued on behalf of the taxing authorities that transfers were not complete until decedent's death. The court pointed out that the transfers from Hook to himself, as trustee, were fully completed when made in 1931. The securities transferred constituted the corpus of the estate and nothing remained to be done to complete the transfer. It is to be noted that the Tax Court, as recently as 1959, gives full effect to the McDermott decision. McGehee, Estate of Delia Crawford, 28 T.C. 412.
 
 
 19
 In Maass v. Higgins, 312 U.S. 443, 61 S.Ct. 631, 633, 85 L.Ed. 940, consideration was given to the relationship of dividends to capital and it was said:
 
 
 20
 "And the promise to pay interest or rent, or the expectancy of dividends upon stock, the amount of such payments, the past and prospective regularity of the payments, and other elements bearing upon the expectation of the receipt of income affect the value of any income producing property. But these elements are not separately valued in appraising the worth of the asset at any given time. It is the uniform practice to value the asset as an entirety, taking into consideration all the elements that go to give it value in the market."
 
 
 21
 In the present case, we have approved the decision of the district court that the exercise of power to alter, amend or revoke, provided in a trust instrument and without specific limitations upon such power, requires under Sec. 811(d) (2) that the corpora are includible in the estate of the decedent by reason of the reservation of power to alter, amend or revoke, provided in a trust instrument without specific limitation upon such power. The classic test of the existence of such reservation of power is that its exercise will invade the corpus of a trust. The adding of undistributed income to corpus is the negation of a power to invade corpus.
 
 
 22
 The order of the District Court for the Eastern District of Michigan is affirmed. The order of the District Court for the Western District of Michigan is reversed and the case remanded to the District Court for the Western District of Michigan for proceedings in conformity with this opinion.